UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 26, 2025

LETTER TO ALL COUNSEL OF RECORD

Re: *Raushaun F. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
Civil No. 24-1792-CDA

Dear Counsel:

On June 19, 2024, Plaintiff Raushaun F. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2025). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 13, 15, 17). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I. **PROCEDURAL BACKGROUND**

Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits on July 26, 2021, alleging a disability onset date of November 17, 2019. Tr. 169-77. Plaintiff's claims were denied initially and on reconsideration. *Id.* at 86-90, 94-96. An Administrative Law Judge ("ALJ") held a hearing on July 11, 2023. *Id.* at 41-68. Following the hearing, on August 29, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. *Id.* at 20-40. On April 18, 2024, the Appeals Council denied Plaintiff's request for review, *id.* at 9-15, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Martin O'Malley, the Acting Commissioner of Social Security, on June 19, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Raushaun F. v. Bisignano*
Civil No. 24-1792-CDA
September 26, 2025
Page 2

## II.    THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 26, 2021, the application date." Tr. 25. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "generalized anxiety disorder, depression, and degenerative joint disease of the right ankle." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of asthma, vomiting, and diarrhea. *Id.* at 25-26. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 26. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in [20 C.F.R. § 416.967(b)] except [Plaintiff] is limited to four hours total of standing and/or walking in an eight-hour day; is limited to no climbing ladders, ropes, or scaffolds, as those are defined in the [DOT] and [SCO]; is limited to occasional exposure to non-weather temperature extremes of heat or cold, wetness and non-weather humidity, vibration, or atmospheric conditions, as those are defined in the [DOT] and [SCO]; is limited to no exposure to hazards, as those are defined in the [DOT] and [SCO]; can understand, remember, and carry out simple instructions; can have frequent interactions with supervisors and/or coworkers, but occasional interactions with the public; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; and can deal with occasional changes in a routine work setting.

*Id.* at 28-29. The ALJ determined that Plaintiff "is unable to perform any past relevant work" as a Maintenance Worker (DOT[3] #382.664-010) but can perform other jobs that exist in significant

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO")* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected*

numbers in the national economy. *Id.* at 35-36. Therefore, the ALJ concluded that Plaintiff has not been disabled since the application date, since July 26, 2021. *Id.* at 37.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff argues that the RFC lacks the support of substantial evidence because the ALJ failed to build an accurate and logical bridge between the evidence and specific production rate limitation in the RFC and properly evaluate the medical opinions of Dr. William Bergin and Ms. Brooke Heiple. ECF 13, at 9-16. Defendant counters that the ALJ adequately explained the inclusion of the production rate limitation and followed the requirements for evaluating medical opinions. ECF 15, at 7-19.

  a. *The ALJ built an accurate and logical bridge between the evidence and production rate limitation.*

The Court finds that the ALJ built an accurate and logical bridge between the evidence and production rate limitation.[4] *See generally* Social Security Ruling ("SSR") 96-8p, 1996 WL

---

*Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

[4] Plaintiff argues in his reply brief that his challenge to the production rate limitation is based on the ALJ's failure to comply with SSR 96-8p, not whether the RFC adequately addressed his moderate CPP limitation. *See* ECF 17, at 2-7. According to Plaintiff, these are two "superficially similar, yet fundamentally distinct issues[.]" *Id.* at 2. Plaintiff overlooks two critical facts. First, "the ALJ need not discuss every piece of evidence or follow a particular format in conducting his analysis." *David C. v. Bisignano*, No. 24-2247-CDA, 2025 WL 2172675, at *5 (D. Md. July 30, 2025) (citing *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)). Instead, to determine whether SSR 96-8p is satisfied, "[w]e must read the

374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion[.]"); *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) ("[E]very conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by a narrative discussion describing [] the evidence that supports it." (citation omitted) (second alteration in original)); *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("[T]he ALJ must both identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." (citation omitted) (emphasis and second alteration in original)). As an initial matter, the Court agrees with Plaintiff that the ALJ failed to explicitly identify what evidence they relied on to include a production rate limitation. Even so, a careful review of the ALJ's decision shows that the ALJ provided substantial evidence for the specific production rate limitation in the RFC. *See Larry B. v. Bisignano*, No. 24-1696-CDA, 2025 WL 2166070, at *4-6 (D. Md. July 30, 2025) (approving a production rate limitation despite an ALJ's failure to explicitly identify what evidence they relied on in reaching the limitation); *Krysten S. v. Bisignano*, No. 24-2943-DRM, 2025 WL 2144964, at *4-5 (D. Md. July 28, 2025) (same).

Courts in this District have previously recognized that similar production rate limitations in an RFC adequately account for a claimant's moderate CPP limitations. *See, e.g.*, *Estelle G. v. Dudek*, No. 24-0012-CDA, 2025 WL 923411, at *3-5 (D. Md. Mar. 26, 2025) (collecting cases and holding that an RFC restricting the claimant to "simple, routine, and repetitive tasks in an environment where [Plaintiff] is not expected to perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas[,]" adequately accounted for the claimant's moderate CPP limitation); *id.* at *4 ("Where an ALJ fails to explicitly identify what evidence they relied on to conclude that a production rate limitation accounts for a moderate CPP limitation, courts in this District have found that other evidence in the ALJ's decision may still provide substantial evidence for the ALJ's inclusion of a production rate limitation in their RFC."); *Michelle W. v. O'Malley*, No. 23-2898-CDA, 2024 WL 3925065, at *2-4 (D. Md. Aug. 23, 2024).

Here, the ALJ concluded that Plaintiff had a moderate CPP limitation and prescribed a production rate limitation that adequately accounts for his CPP limitation. Tr. 27, 29. The ALJ, like the one in *Estelle G.*, then considered other evidence of Plaintiff's CPP limitation in the RFC discussion. Multiple references imply that the ALJ intended that the limitation account for Plaintiff's CPP limitation. For example, the ALJ declined to adopt a medical opinion's mild CPP limitation due to Plaintiff's ongoing mental illness monitoring, social withdrawal, and cognitive deficits. *See id.* at 35. The ALJ then excluded work with a specific production rate to "offer[] greater restrictions and contemplate moderate functional restrictions." *Id.* (cleaned up). The ALJ concluded that, "considering the totality of the evidence as to [Plaintiff]'s impairments, and in accounting for some of [Plaintiff]'s allegations, . . . [Plaintiff] retains the [RFC] specifically set forth above in this Finding." *Id.* In addition to those references, the ALJ noted Plaintiff's

---

ALJ's decision as a whole." *Keene v. Berryhill*, 732 Fed. App'x 174, 177 (4th Cir. 2018). Second, "[i]n reviewing SSA decisions, the Court applies a harmless-error standard." *David C.*, 2025 WL 2172675, at *4 (citing *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017)). Therefore, even if an ALJ fails to comply with SSR 96-8p, a claimant must still demonstrate that such error is not harmless.

complaints of concentration problems, "dysphoric moods, irritability, low energy, and diminished sense of pleasure." *Id.* at 27, 30. The ALJ recognized Plaintiff's concern that he suffered "excessive apprehension, restlessness, and racing thoughts[.]" *Id.* at 30. However, the ALJ also observed that Plaintiff had "largely [] been stable from a mental health perspective" and "not required a regular regimen of mood-stabilizing medications or anxiolytic medications." *Id.* at 31. The ALJ further noted Plaintiff's presentment with normal mood, behavior, thought processes, judgment, insight, and orientation at numerous examinations between April 2020 and May 2023. *See id.* at 31-32. Given this analysis, the ALJ's decision provides a "logical bridge" connecting evidence of Plaintiff's moderate CPP limitation to the specific production rate limitation in the RFC. *Woods*, 888 F.3d at 694.

Regardless, Plaintiff does not argue that he cannot perform the RFC. *See Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016) (concluding that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to non-production oriented work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits") (alterations in original). He therefore cannot prevail on this basis; the Court's review is not "frustrate[d]" by the alleged "inadequacies in the ALJ's analysis[.]" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). Moreover, Plaintiff fails to identify any RFC provision that the ALJ should have included in lieu of the production rate limitation and fails to explain how a more detailed explanation of the ALJ's decision to include the limitation might change the outcome of this case. *See Estelle G.*, 2025 WL 923411, at *4; *Michelle W.*, 2024 WL 3925065, at *4.

> b. *The ALJ properly evaluated Dr. Bergin and Ms. Heiple's medical opinions.*

The Court finds that the ALJ properly evaluated the medical opinions of Dr. Bergin and Ms. Heiple.[5] An ALJ "must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. 20-3136-SAG, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. § 416.920c). The ALJ must "articulate . . . how persuasive [the ALJ] finds each medical opinion." *Id.* (citing 20 C.F.R. § 416.920c(b)). Because "[s]upportability and consistency are the most important factors when considering the persuasiveness of medical opinions," an ALJ must "explain how [they] considered the supportability and consistency factors[.]" *Id.* Supportability and consistency "must be considered independently" from each other. *Carlos F. v. Kijakazi*, No. 22-2049-BAH, 2023 WL 3293086, at *3 (D. Md. May 5, 2023); *see also Duane H. v. Kijakazi*, No. 20-3673-JMC, 2021 WL 8314949, at *3 (D. Md. Dec. 29, 2021) (recognizing that to consider supportability "in conjunction with" consistency "would conflate the nuances of those factors"). As the Fourth Circuit noted earlier

---

[5] Plaintiff faults the ALJ for failing "to properly apply the . . . other factors under § 404.1520c[.]" ECF 13, at 13. But "[f]or claims filed after March 27, 2017, an ALJ is not required to evaluate each factor." *Amanda C. v. Dudek*, No. 23-2877-CDA, 2025 WL 722691, at *4 n.5 (D. Md. Mar. 6, 2025). As long as an ALJ properly assesses the supportability and consistency of an opinion, the Court will not disturb "the ALJ's decision whether to consider these factors." *Id.*

this year, ALJs "normally focus" on these two factors when assessing what, if any, weight to assign to medical sources. *Drumgold v. Commissioner of Soc. Security*, 144 F.4th 596, 605-06 (4th Cir. 2025).

"Supportability generally refers to 'the objective medical evidence and supporting explanations provided by a medical source.'" *Adrianna S.*, 2022 WL 112034, at *1 (quoting 20 C.F.R. § 416.920c(c)(1)). "Strictly speaking, 'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Carlos F.*, 2023 WL 3293086, at *3 (internal quotation marks and citation omitted); *see also Mary W. v. Comm'r of Soc. Sec.*, No. 20-5523, 2022 WL 202764, at *10 (S.D. Ohio Jan. 24, 2022) ("For the ALJ to have adequately discussed the supportability of [medical source] opinions, the ALJ needed to evaluate what the [medical source] said they based their opinions on—not simply how their opinions compared to the record evidence as a whole, which only goes to . . . consistency[.]"). Supportability is not considered independently when the ALJ only analyzes "the consistency of an opinion with other opinions from the . . . rest of the record[.]" *Timeka M. v. Kijakazi*, No. 22-3194-BAH, 2023 WL 5804645, at *3 (D. Md. Sept. 6, 2023). Instead, the ALJ "must assess the relevance of 'the objective medical evidence and supporting explanations presented by a medical source' to the ultimate finding advanced by that medical expert." *Id.* (quoting 20 C.F.R. § 416.920c(c)(1)).

"Consistency" is the extent to which the medical opinion is consistent with evidence from other medical and nonmedical sources in the claim. 20 C.F.R. § 416.920c(c)(2). The more consistent the opinion is with the other evidence, the more persuasive the opinion is. *Ibid.* Consistency is an "outward facing inquiry," *Valentine v. O'Malley*, No. 24-0141-DCC-TER, 2024 WL 4445255, at *4 (D.S.C. Sept. 12, 2024), that requires the ALJ "to evaluate a medical source's opinion in comparison to other evidence in the record," *Rosa M. v. Kijakazi*, No. 22-4494-BHH-MHC, 2023 WL 9101308, at *4 (D.S.C. Dec. 8, 2023). In assessing consistency, the ALJ must consider whether the opinion is "consistent with evidence from sources *other* than [the source of the opinion]." *Marie T. v. O'Malley*, No. 23-1320-CDA, 2024 WL 2114811, at *3 (D. Md. May 10, 2024) (emphasis in original).

Ms. Heiple and Dr. Bergin treated Plaintiff in May 2023 and "offered assessments of physical functioning." Tr. 33. Ms. Heiple limited Plaintiff to a 16-hour work week, sedentary to light work, no prolonged static positioning, no bending, no heavy lifting, and frequent position changing. *Id.* Dr. Bergin limited Plaintiff to sedentary activity as tolerated and no more than 4 hours on 4 work days each week. *Id.* The ALJ began with supportability, finding that "[w]hile Ms. Heiple and Dr. Bergin are familiar with [Plaintiff]'s treatment history, their assessments are incomplete in that they failed to identify the specific physical exam findings upon which they relied in rendering these assessments." *Id.* The ALJ then pivoted to consistency, finding both opinions "inconsistent with contemporaneous observations on May 12, 2023, during which [Plaintiff] noted chronic right ankle pain but walked with a normal gait and station." *Id.* This evaluation, while not concluding what Plaintiff hoped, complies with the applicable regulations.

Plaintiff argues that the ALJ erred in not acknowledging that both opinions were "indicative of prescribed treatment for [Plaintiff] moving forward." ECF 13, at 14. Plaintiff avers

*Raushaun F. v. Bisignano*
Civil No. 24-1792-CDA
September 26, 2025
Page 7

that, had the ALJ done so, "the consistency between [both opinions] regarding [Plaintiff's] functional restrictions [would have] establishe[d] that the consistency factor [would] have weighed in favor of [Plaintiff]." *Id.* Not only does Plaintiff fail to cite authority for this proposition, but he also misconstrues the standards applicable to opinion analysis. As noted above, consistency looks "outward" for the purpose of comparing the opinion to other record evidence. *Valentine*, 2024 WL 4445255, at *4; *Rosa M.*, 2023 WL 9101308, at *4. Therefore, comparing Dr. Bergin and Ms. Heiple's opinions to a May 2023 treatment record satisfies the consistency probe. A review of the record indicates that the ALJ compared the opinions to other evidence in the record after finding that the opinions "failed to identify the specific physical exam findings upon which they relied in rendering these assessments." Tr. 33.

Plaintiff further claims that the ALJ "cherry-picked" evidence while analyzing supportability. ECF 13, at 15. It is true that an "ALJ is not allowed to cherry-pick the record, referencing only the evidence that supports his conclusion as to the persuasiveness of the medical opinion and ignoring evidence to the contrary." *Angelena S. v. Kijakazi*, No. 22-1022-SVH, 2022 WL 17974702, at *15 (D.S.C. Dec. 28, 2022) (citations omitted); *accord John O. v. Kijakazi*, No. 21-1378-AAQ, 2022 WL 2305255, at *3 (D. Md. June 27, 2022) (observing that when evaluating medical opinions, an ALJ must "discuss records that directly contradict the ALJ's conclusions"). However, the ALJ did not impermissibly "cherry-pick" evidence here. The ALJ referenced evidence manufactured on the same day that the opinions issued, believing such evidence to be relevant to the opinion analysis. That is, Plaintiff presented at an examination with a normal gait and station on the same day that Dr. Bergin and Ms. Heiple issued their functional assessments. It appears to the Court then that the ALJ found the opinions not persuasive in part due to Plaintiff presenting with a normal gait and station on the same day that the opinions issued.

Plaintiff's challenge amounts to a disagreement with how the ALJ evaluated the persuasiveness of Dr. Bergin and Ms. Heiple's opinions. But this Court "does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; '[w]here conflicting evidence allows reasonable minds to differ,' we defer to the Commissioner's decision." *Fiske v. Astrue*, 476 Fed. App'x 526, 527 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Deference it is.

\*   \*   \*

The ALJ's reliance on substantial evidence and a discussion of Plaintiff's record in assessing the RFC permits meaningful review for the reasons explained above. A reasonable mind would accept the evidence provided as sufficient to support the ALJ's conclusion. *See Laws*, 368 F.2d at 642. That being the case, any disagreement Plaintiff (or even the Court) might have with the ALJ's conclusions are not enough to reverse the decision. *See Drumgold*, 144 F.4th at 605. Accordingly, remand is unwarranted.